We are now streaming to the public. Ms. Gettis, you may start court. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eleventh Circuit is now open and calling to law. God save the United States and His Honorable Court. Good morning and welcome to the Eleventh Circuit. Today we have one case on for consideration and we will hear that case now. That case is HM Florida-ORL, LLC v. Secretary of the Florida Department of Business and Professional Regulation. We'll hear first from Mr. Forrester. Thank you, Your Honor, and may it please the court. The preliminary injunction at issue in this case bars the state of Florida from enforcing its Protection of Children Act against any party anywhere in the state. And we believe this injunction suffers multiple flaws, the first of which is a lack of standing. Regarding standing, Hamburger Marys has not met its burden of proving an injury in fact that is traceable to and redressable by Secretary Griffin. It's important to keep in mind that this is a pre-enforcement challenge, which means that for purposes of standing, Hamburger Marys must submit actual evidence, both of an intention to engage in conduct that is arguably prescribed by the Protection of Children Act and of a credible threat of prosecution. And the only evidence that Hamburger Marys submitted in support of its preliminary injunction motion in this case was its verified complaint. And what it said in that complaint about an intention to engage in conduct that might be prescribed by the Protection of Children Act consists entirely of the following. They offer family-friendly drag performance where there is no lewd activity, no sexually explicit shows, no disorderly conduct, no public exposure, no obscene exhibition, and nothing inappropriate for a child to see. Can I stop you for a second and just ask, I thought they also asserted that Florida had launched administrative proceedings seeking to revoke the liquor licenses of a handful of businesses that had hosted drag events that allegedly violated other laws against quote lewd and lascivious exhibition in the presence of a minor less than 16 years of age. And so what I'm wondering is because of the similarity of the language between the statutes and because of the fact that at least in one of these cases, it's alleged that undercover state inspectors reported seeing no lewd displays at the drag show, but the state still filed an administrative complaint. Why isn't that enough for them to be reasonably chilled? Well, because we don't believe they actually have demonstrated that their shows are reasonably similar to those other ones going by the description in their complaint, which is all they have submitted. It would seem that they are doing nothing that would violate the statute. On the other hand, they have said that what they did is they cut back to all of the only performance they're allowing children into or the only performance they had been allowing children into was the Sunday family friendly one, which they have now stopped doing as well. So why doesn't that show self-censorship that is reasonable, given the scope of the enforcement that has been undertaken on similar statutes, at least as they've alleged it? Well, that would suggest that they're making a self-censorship claim based on their claim that the statute is vague. But what this court said in Herald via the Florida Bar was that when you make a claim of self-censorship from the alleged vagueness of the statute, you still have to show that you arguably fall within the scope of the statute, and that the statute's arguably vague as applied to you. And they haven't made that showing. Let me ask you, though, haven't they asserted that they have censored themselves on their drag performances, for example? But that is their decision. That's not a decision for which Kerry Griffin is responsible. Well, that is certainly your position on this. But what they've alleged in their complaint is that the state of Florida has enforced other statutes with similar language against drag shows when there was no report of a lewd display there. And so why isn't that enough? Well, we attached the exhibits to our complaints, I'm sorry, to our response to the preliminary injunction motion to show that the nature of those shows were actually quite different than what they allege in their complaint, in their verified complaint. And the fact that one officer might have thought that there was no lewd conduct doesn't settle the fact, obviously, for anybody in authority in the state of Florida. Well, that's true. But that just raises another problem, right? I mean, once we get past standing, that raises the problem of what do we mean by lewdness? So, you know, I don't know if you want to get into the merits part or if you want to keep going with standing. But that's something that I think also needs to be addressed. Yeah, I mean, I could jump to that that goes to their vagueness claim. And I'd be happy to go there. I think the chief flaw with their argument and the district court's ruling on this front was its willingness to declare this statute vague on its face, because it's important where they're bringing a facial vagueness challenge as well as a facial First Amendment challenge. And this court has said repeatedly that facial vagueness occurs when a statute is utterly devoid of a standard of conduct so that it simply has no core. And certainly there is a core to the statute that is easily ascertainable. There are all kinds of sexually explicit live performances, and nobody will have any doubt about being inappropriate for a child to see, even under including under the obscenity standard that applies in this statute. Where is the definition of lewd in this provision or anywhere in the Florida statutes? Because it your brief talks a lot about obscenity. And I would agree that Miller and Ginsburg cases affirm in some ways your definition or wrapping around obscenity, but where is lewd? And I'm also asking about how you're defining child because the statute only refers to child. But your brief talks about how parents or someone has the discretion to decide whether or not a minor, who arguably is classified as a child, has the maturity to sit through the live performance. So where is the definition of lewd? And how are you all defining child? Lewd is a word of longstanding usage of Florida common law and Florida statutes. It's used in state and federal statutes. Well, the district court found that the closest definition it could find was in a jury instruction, which arguably was circular in its definition. Yeah, it's important to recognize that the common element to that jury instruction, applying the Noskiter Associates canon, is that everything there needs to be sexually explicit. So the word lewd is basically a reference to something that is sexually explicit. And we think that is something that everyone understands as a matter of common sense. And juries are capable of applying that. They've been applying that in Florida statutes throughout history, that we have all kinds of statutes that prohibit lewd and lascivious exhibitions in front of children, for instance. And nobody's ever successfully challenged any of those as being unconsciously vague. And it's also important to recognize that the word lewd is just, that is the conduct that then qualifies to be filtered through the three-part obscenity test that is derived from Miller and Ginsberg here. So that provides an additional cabining feature. And so we don't think there's a realistic danger that the word lewd could be considered vague, particularly not on its face. Maybe you could tell us exactly what you think lewd means then, and what you think it clearly means for anybody who is reading the statute. Well, it would certainly mean that a sexually explicit performance on the level like an X-rated movie would be something that a child couldn't see. And where do we get that it's coming from an X-rate, that it's the equivalent of an X-rated movie performance? That would be so sexually explicit, I don't think anyone would have any doubt that that constitutes something lewd. Okay, but where it is, so we have sexually explicit that falls under X-rated movies. I am understanding that the definition of lewd in this statute is intended to cover more than that, but maybe I'm mistaken. And if I am, you should let me know that. And if it does cover more than what would be covered in an X-rated movie, then I need to know what exactly, what and where you're getting that from. Well, for instance, keeping in mind that this is an age variable standard for a six or seven-year-old child, something that is sexually suggestive, that might be entirely appropriate for a 16 or 17-year-old child, but still we think qualified as lewd and obscene for that child. Okay, and so how does somebody know whether something is okay for say a 12-year-old, but not for say an eight-year-old? Well, again, this does at the edges call for the exercise of judgment and common sense. All obscenity statutes do that, but those are edge cases and they don't take away the fact that there is an amply discernible core to this, which is enough to defeat the facial vagueness that they have brought here. For example, in Shakespeare plays, sometimes there is the use of imitation breasts or imitation genitals or something of that nature. And so would a Shakespeare play that uses that type of prop, if that's presented, would that violate the statute? And if so, for what age would it violate the statute? I don't think that would be lewd under any definition, much less- But it's an imitation genitals and the statute refers to lewd exhibition of imitation genitals. So how do we know? And lewd exposure too of imitation genitals. So how do we know that that's not covered? I'm not aware of a Shakespeare play that has actually exposed genitalia as part of the performance. So I was assuming- I'm talking about imitation. Imitation. I'm not talking about real. Covered or uncovered? Exposure of imitation genitals. Well, if they were exposed, I think that there would be a danger that that could be lewd for, yeah, yes, I think that could be lewd. It would have to be in a suggestive way. So a sex ed presentation- But it says exposure. It doesn't say exhibition. I mean, it says exhibition too, but it says or exposure. So I think it just means that you have to be able to see it, right? I mean, what does that mean? It says lewd exposure. That's what I'm trying to get at. What do we mean? Lewd exposure. Well, I think everyone has a sense of what the word lewd means and there is a line there. And I admit there are difficult edge cases, but that's not enough to render it facially vague. There is definitely a discernible core. I mean, this is a problem that is basically endemic to obscenity statues in general and the Miller test as a whole. And I see I've already used up the- Well, I mean, I would appreciate a little bit more explanation. So you have Hamburger Mary's that was conducting drag shows where parents brought their children. So that suggests consent. And now they don't provide those shows in front of children. So you had parents and children arguably who felt comfortable with these performances that were happening before this statute was enacted and someone in the legislature perhaps felt that the mere presentation of those shows was problematic and enacted this statute to address those scenarios. And so how should Hamburger Mary's and others determine whether or not their shows are lewd if there's no clarity as to what constitutes lewd behavior? Well, I dispute that there is no clarity. I think the word has an understanding that everyone can ascertain and the vast- The district court disagreed with you and now you're here on appeal. And so arguably you had at least one reasonable mind in the district court judge who didn't find that it was clear. So what more do you have other than saying it's generally understood and clear? Do you have something more concrete that you can point to in the statute? Well, I will say this. At the very minimum, if you do think there is absolutely no discernible core to the word lewd, what the Supreme Court has directed in multiple cases is that you construe it consistent with the obscenity standard in Miller. That's what they directed to do with the 12 200 foot reels of film case. Right. But the problem is that Miller itself has a requirement. I'd call it a procedural requirement that the definition, that the conduct be clearly defined that we're talking about. And so you can't even get to the Miller test if you don't have clearly defined conduct. But again, I just dispute the province that there is not a discernible core to the word lewd. I mean, I hate to sound like a broken record, but I do think that people do have a decent sense of what the word lewd means in the vast majority of applications. There will always be edge cases. That is true with the nature of human language. But I don't think that makes it facially vague. And I just have one more question. Then if we revisit the term child, where in the statute is there guidance to determine how to decide which minors can sit through such a live performance? Well, that comes from the obscenity test itself, which requires discerning whether the performance would be patently offensive according to prevailing standards in the adult community of the state with respect to the age of the child present, and also whether it would be without serious literary artistic value for the age of the child. For seven-year-olds, you're saying that it's generally understood that they should not be sitting through a drag show performance. But for 16-year-olds, again, without any individualized assessment, a 16-year-old, it's okay, even though technically they're both minors or legally children. I'm not even sure it would be improper for a seven-year-old if you're just describing a male drag performance. It would have to be sexually explicit and rise to the level of being obscene for a child of that age. That would require nothing more than just being dressed in drag. So the example of the Shakespeare play, I see that would be entirely harmless. All right. Thank you very much. You've reserved three minutes, and we'll hear from Ms. Stewart. Thank you, Your Honor, and may it please the Court. The Secretary has presented this law as though it is an unremarkable obscenity statute, merely intended to protect children from only the most sexually explicit content. It is not. The statute employs broad, undefined terms like lewd conduct and lewd exposure. It implements a dynamic obscenity standard that sweeps up a large amount of protected speech and makes compliance practically impossible. Enforcement of the law is vested in the Secretary, who has already demonstrated, as the District Court pointed out, an appetite for finding obscenity in performances where there is none to be found. Any one of these features would chill protected speech, but in concert they pose a serious threat to the First Amendment rights of Floridians. I would like to begin by just clarifying the record for Your Honors and specifically the contents of the verified complaint. In addition to the child-friendly Sunday drag shows that are how Hamburger Mary's has presented drag performances at its venues since 2008, and that those performances include comedy sketches, bingo, trivia, and dancing, the complaint also extensively describes drag and explains that performers often wear prosthetic breasts, that each performer makes unique choices about both their costumes and their content that vary from lip-syncing to Dolly Parton in a ball gown to sexual innuendo and the kind of dancing that one might see at a Miley Cyrus or Taylor Swift concert. And importantly, Hamburger Mary's has every reason to fear that all of their drag performances, including the Sunday drag performances that are specifically intended to be child-friendly, could subject them to prosecution under this law. And I think the standing analysis and the vagueness argument are intertwined here because Hamburger Mary's has no way of knowing what the secretary is going to define as lewd conduct or lewd exposure of prosthetic genitals and breasts. And as Your Honor pointed out, exposure can just mean visibility. So is a drag performer in a ball gown showing cleavage, prosthetic breasts, is that lewd conduct or lewd exposure? And I think the Plaza Live case is particularly instructive here because the secretary went after Plaza Live prior to the passage of this act. And so the secretary was working with long-established Florida obscenity statutes. And the specific statute that the secretary used, section 800.04, defines lewd or lascivious exhibition in great detail. And the secretary, even with that term being so well-defined in that statute, still the secretary and her undercover agents were unable to agree on whether or not the drag show had violated that law. So plaintiff's fear and plaintiff's actions that Hamburger Mary's has taken to self-censor are not speculative. They are not an overreaction. They have no way to determine how the secretary is going to define a term like lewd conduct that has no definition. Well, I think the state's argument that Salerno does cabin a little bit, the striking down of a law as facially unconstitutional has some validity. So I guess I'm trying to understand why this is better framed as a facial as opposed to an as-applied challenge, especially given the allegations in the complaint that Hamburger Mary's doesn't believe that its performances would even satisfy the lower standard definition of lewd or obscene. Well, Your Honor, the paragraph in the verified complaint, which Mr. Forrester referred to, does not say that all of Hamburger Mary's performances do not contain anything sexually explicit or lewd. It is specifically talking about the Sunday afternoon performances. Hamburger Mary's has not made any statements about the rest of its drag performances, which it does describe in the complaint, and certainly has never made that claim for the rest of their drag performances. But again, Hamburger Mary's is a family-oriented restaurant that performs drag shows as a core part of its business model. So it follows that Hamburger Mary's does not think that its performances are inherently harmful to children. But Hamburger Mary's own opinion of drag is not what determines their standing here. And the concern, the vagueness doctrine is concerned with the chilling effect on speech. And the vagueness doctrine says that governments have, legislatures have to give citizens the ability to determine what is and is not prohibited under a law so that they can reasonably make decisions about compliance. And it also, importantly, has to give law enforcement clear standards for how to enforce the law. And this statute, the undefined terms, in combination with this dynamic obscenity standard that is determined by the specific age of the child present at the performance, makes it impossible for citizens to know how to comply with this law. And it gives law enforcement the opportunity to enforce this law in arbitrary and discriminatory ways. Additionally, I think it's important to note that the First Amendment, as the U.S. Supreme Court said in U.S. v. Stevens, the First Amendment protects against the government. It does not leave citizens at the mercy of noblesse oblige. It doesn't leave citizens at the mercy of just taking the government at their word that they only intend to enforce the statute against what equates to X-rated content. And Florida already has much more narrowly tailored, longstanding obscenity statutes on the books that specifically protect children. Section 847.013 governs the exposure of minors to harmful motion pictures, exhibitions, shows, presentations, or representations. It governs exactly the kind of content that the state claims this statute does, only it does it without employing vague, overly broad terms like lewd conduct and lewd exposure. And that law also includes a limiting provision, which allows for minors accompanied by parents or guardians to attend those exhibitions, shows, presentations, regardless of the minor's age, just like we per- Does the state's response that there's this sliding scale in terms of children or minors who can participate address in some way the parental consent that's missing, I guess, explicitly from the statute? Essentially the idea that even though there doesn't seem to be a limitation or protection for parental consent, the fact that 16-year-olds can sit in on these live performances is in some way parental consent, as opposed to a seven-year-old that the parent decides is not mature enough to sit through such a performance. If I'm- I think that's what the state just argued. No, your honor. I don't think that that addresses the issue at all, because again, it's not the parents who are going to be determining whether or not a show is harmful for a seven-year-old versus a 16-year-old. It's going to be Secretary Griffin. Counsel, let's suppose that in a given case, the performance- the state believed that the performance constituted child abuse by the parent bringing the child to the place. As part of it, this is a prophylactic arrangement which is designed to prevent certain things, including child abuse. There are some parents will do most anything to a child. We know that. The law books are just full of abuse of children by parents, especially when you've got a boyfriend in and you've got a mother and the boyfriend doesn't like the little kids. Take them to a juvenile. Juvenile courts are full of these kinds of cases of parental abuse where there's a chance that they'll remove the child from the parent's care altogether. Your honor, Florida already has statutes on the books that address that kind of abusive behavior. Section 800.04 makes it a crime to intentionally expose a child to sex acts, a certain well-defined- It's not enough. I'm sorry, your honor? It's not enough. Well, your honor- We know that every time you enact a law to prohibit something, people get around it and do something else. Yes, your honor, but those statutes have been very effectively in Florida used to prevent children from viewing very sexually explicit content that would be harmful to them. And the only distinction, there are two primary distinctions between those statutes and this statute. This statute uses this dynamic obscenity standard that requires it to be predicated on the specific age of a child in the audience. And it uses these two undefined terms. All of the rest of the terminology in this statute already exists in other similar statutes. And that's why the legislature imported those definitions into this law. But they left the term- They left the terms lewd conduct and lewd exposure of prosthetic genitals and breasts, which is very clearly intended to target drag performers who famously wear prosthetic breasts. They left those terms undefined. Intentionally to give the secretary a broader capability to go after establishments like Plaza Live, like Hamburger Mary's that host drag shows and that allow parents to make a determination on whether or not that drag show is appropriate for their child. And as the United Courts should not presume that parents given the full information will fail to act. Parents know how to protect their children from harmful content. And of course, there are always going to be parents that don't do the right thing. But courts should not presume that parents will not do the right thing. Let me ask you a question, just as a hypothetical. Assume for purposes of this hypothetical, that we find that the restrictions on performances with lewd conduct and lewd exposure of prosthetic or imitation genitals or breasts are unconstitutional, as you've suggested. But that still leaves other portions of the statute. And I'm wondering, what is the basis, if any, that you are suggesting that the other portions of the statute should be invalidated? Well, Your Honor, I think that the primary issue with this statute, other than those two undefined terms, is this dynamic obscenity standard. This court in Webb dealt with a Georgia state law that used the more traditional obscenity standard adapted for minors, where they use language for minors. And one of the issues in that case, the district court said, was that it swept up this huge amount of content, you know, content that would be inappropriate for a two-year-old and for a 17-year-old. And this court found that that language was readily susceptible to a narrowing construction, wherein it only prohibited conduct or content that would have no value for any reasonable minor, even a reasonable 17-year-old minor. And that is a much narrower amount of content that law covers than here, where it's... I'm sorry to interrupt, but I just want to make sure I'm getting the gist of what your position is. Your argument is that because of the sliding age scale, that that causes any remaining aspects of the statute to be overbroad, to be vague. What exactly is the issue for you? I think to be both overbroad and vague, Your Honor. It covers a huge amount of content, and it does exactly what the Supreme Court said in Reno, courts are not, or governments are not to do, which is make all, make content, make all of adult speech, excuse me, all adult speech appropriate for a sandbox, appropriate for the youngest possible age. And so that's why I don't think those terms are severable here, because this statute cannot be separated from this dynamic, adapted Miller standard that the legislature chose to use. I think that if the legislature had used the terms for minors, as opposed to for the age of the child present, I think that there would be a really excellent severability argument. But in that case, this law would be completely contained. I see that my time has expired. Thank you, Your Honors. All right. Thank you, counsel. Mr. Forrester, you have reserved three minutes. Thank you, Your Honor. A couple of points. Opposing counsel admitted that the complaint actually says nothing about what the rest of their performances are like. That's precisely our point. They bear the burden of proving standing at the preliminary injunction stage. And the only thing they have said about the drag shows that go on at their place is that they are entirely family friendly, free of any lewd conduct. They are themselves are able confidently to ascertain that there is nothing lewd going on, putting the lie to their claim that lewd is not an understandable word. They say that the complaint alleges that they engage in bingo and dancing and comedy. Nothing about that is even arguably prescribed by the statute. Briefly on the parental consent exception that they brought up, the Supreme Court actually said in Brown v. I think it's Entertainment Merchants Association, they actually said that having a parental consent exception for violent video games made that statute underinclusive. So there would be a risk if the state had included a parental consent exception here. They would actually consider it to be not serious about the compelling interests that they are pursuing in protecting children from exposure to performances that would be obscene as to that child. Counsel referred to the prospect that adult speech is affected somehow by this. No adult speech is affected in any way by this statute. Hamburger Marriage is entirely free to continue with all its performances. All adults are free to continue to attend. Older children for whom the performances are age appropriate are continued to attend. The only thing that they have to do is performances would be obscene. And then finally in the remaining minute and a half, I'd like to quick get out our argument about what we think is an additional vice of this injunction, which is that it extends beyond the plaintiffs in this case. So you can't bring up something new that you haven't brought up before because now Ms. Stewart doesn't have an opportunity to address. Fair enough. We'll rest on the briefs then. I have nothing further your honor. Unless you have questions. Any questions? All right then. We thank you both and please stay safe in the upcoming storm and we will be in recess for the day. Thank you, your honors.